**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2847
_____

RICHARD DILAURI,
                              Appellant

v.

WILLIAM P. MULLEN, Sheriff, in official and individual capacities; RAMON
RUSTIN, Warden, in official and individual capacities; JANE DOE; JOHN DOE I,
Guard, in official and individual capacities; JOHN DOE II, Guard, in his official and
individual capacities; MICHAEL H. WOJICK, County Solicitor, in official and
individual capacities; ALLEGHENY COUNTY LAW DEPARTMENT, in official and
individual capacities

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 09-cv-00198)
District Judge:  Honorable Sean J. McLaughlin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 19, 2012

Before:  CHAGARES, VANASKIE and BARRY, Circuit Judges

(Opinion filed: April 30, 2012 )
_____

OPINION
_____

PER CURIAM

1

Richard DiLauri, a Pennsylvania state prisoner proceeding pro se, appeals an order of the United States District Court for the Western District of Pennsylvania dismissing his civil rights complaint. For the reasons that follow, we will affirm in part and vacate in part the judgment of the District Court.

DiLauri alleges in his complaint that on August 6, 2007, he fell down a flight of stairs while being escorted by Deputy Sheriff Jane Doe from the Allegheny County Jail Courthouse to his cell.[1] DiLauri, who was wearing handcuffs and leg shackles when he fell, avers that he hesitated at the top of the stairs when he saw how dark and steep the stairs looked. He states that Jane Doe insisted that he go down the steps, even after he told her his leg shackles were tangled. Jane Doe allegedly told him the stairs were the only way down and that he should not worry because she was holding his belt. DiLauri, who weighs 270 pounds, took a few steps but then fell down the stairs. Jane Doe and three other deputies assisted DiLauri after he fell.

An emergency medical team arrived and placed DiLauri on a stretcher. When they came to the stairs where DiLauri had fallen, one of the men allegedly said, "We are not taking him up THOSE steps." Am. Compl. at 2. According to DiLauri, the stairway is a "well known hazard." Am Compl. at 3. The men took an alternate route to transport

---

[1] The operative complaint is DiLauri's second amended complaint, filed September 14, 2010. DiLauri filed his original complaint against Allegheny County Sheriff William Mullen and Warden Ramon Rustin. He then amended his complaint twice, adding unnamed defendants Deputy Sheriff Jane Doe, Guard John Doe I, and Guard John Doe II, Allegheny County Solicitor Michael Wojcik, and the Allegheny County Law Department.

DiLauri to the hospital, where he was diagnosed with torn ligaments and tendons. DiLauri was released the same day with instructions to have follow-up examinations and to soak the bruised areas. DiLauri alleges his pain worsened that evening but the night guard denied his request for a medical visit. DiLauri further alleges that on the following two days he asked guards to place him on medical call, but his requests were denied. DiLauri was transferred to SCI-Greene on August 9, 2007. He was later diagnosed with a fractured left hip and told he would need hip replacement surgery.

Based on these allegations, DiLauri claims the defendants were deliberately indifferent to his safety and medical needs in violation of his Eighth Amendment rights. He avers that Sheriff Mullen should have known the stairway is dangerous, that he failed to resolve the problem, and that he failed to train Deputy Sheriff Jane Doe to recognize the danger. He states Deputy Sheriff Jane Doe failed to prevent his injury by taking another route or asking for help. DiLauri further avers that Warden Rustin was aware he needed follow-up care because he had received DiLauri's paperwork from the hospital. He states Guards John Doe I and John Doe II denied him necessary medical care. Finally, DiLauri contends Solicitor Wojcik failed to provide a safe route from the holding cell to the courthouse and the Allegheny County Law Department maintained an unsafe courthouse.

The District Court adopted the Magistrate Judge's report and recommendation to grant the defendants' motion to dismiss DiLauri's complaint. The Magistrate Judge concluded that the claims against the parties DiLauri had added in his first and second

3

amended complaints are time-barred. The Magistrate Judge further concluded that DiLauri failed to state a claim against Sheriff Mullen and Warden Rustin because he did not allege that they were personally involved in the claimed constitutional violations. This appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam), and on statute of limitations grounds. Lake v. Arnold, 232 F.3d 360, 365 (3d Cir. 2000).

As recognized by the Magistrate Judge, Pennsylvania's two-year personal injury statute of limitations applies to DiLauri's claims pursuant to 42 U.S.C. § 1983. Arnold, 232 F.3d at 368-69. DiLauri was injured on August 6, 2007, and was allegedly denied medical care on August 7 and 8, 2007. DiLauri timely filed his original complaint against Sheriff Mullen and Warden Rustin on or about August 4, 2009. DiLauri, however, did not add Jane Doe and Guard John Doe I as defendants until he filed an amended complaint on May 28, 2010, and he did not add Wojcik, the Law Department, and Guard John Doe II until he filed his second amended complaint on September 14, 2010.

Under Federal Rule of Civil Procedure 15(c), an amendment to a pleading changing a party or the naming of the party against whom a claim is asserted relates back to the date of the original pleading when, among other things, the party brought in by amendment "knew or should have known that the action would have been brought

4

against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii); Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995).

In concluding that DiLauri did not satisfy this requirement, the Magistrate Judge explained that he had not alleged any mistake as to the identity of the new defendants at the time he filed his original complaint. The Magistrate Judge stated that three of the added defendants remained unidentified in the amended complaints and could have been named in generic terms in the original complaint. Noting that this was not a case of mistaken identity, the Magistrate Judge concluded that the claims against the new defendants do not relate back to the date of the original complaint.

We agree with this conclusion. This is not a case where a plaintiff sought to substitute a named defendant for a John Doe defendant in the original complaint. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 200-01 (3d Cir. 2001) (noting Rule 15(c)(1)(C)(ii) may be satisfied when a plaintiff lacked knowledge of the identity of a John Doe defendant when the original complaint was filed). This also does not appear to be a case where a pro se plaintiff made a legal mistake and sued the wrong party. See Urrutia v. Harrisburg County Police Dep't, 91 F.3d 451, 457-58 (3d Cir. 1996) (holding plaintiff should be allowed to show on remand that he satisfied Rule 15(c)(1)(C)(ii) where he mistakenly sued the police department instead of individual police officers).

DiLauri asserts in his brief that he did not know the names of the added parties at the time he filed his original complaint and that he later learned that he could name "Doe" defendants until he discovered their identities. It is not clear, however, from

5

DiLauri's original complaint that he intended to sue anyone other than Sheriff Mullen and Warden Rustin. DiLauri asserted in that complaint that Sheriff Mullen failed to remedy the hazardous stairway and that Warden Rustin failed to see that he received medical care after the fall. He did not assert, as he did in his later complaints, that the deputy sheriff should not have used the stairway or that guards denied his requests for medical care. DiLauri has not shown that his omission from his original complaint of the defendants named in his amended complaints was due to "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Thus, the District Court did not err in dismissing his claims against the Jane and John Doe defendants, Wojcik, and the Law Department as time-barred.

As noted above, the District Court dismissed DiLauri's remaining claims against Sheriff Mullen and Warden Rustin because DiLauri did not aver that either defendant was personally involved in the alleged violations of his rights. The Magistrate Judge stated that DiLauri "merely alleges that both Defendants failed to take action to prevent the conduct of their subordinates[.]" Report at 11.

We find no error in the dismissal of DiLauri's claims against Warden Rustin based on his lack of personal involvement in the alleged harm. DiLauri contends that Warden Rustin was aware that he required follow-up care upon release from the hospital because Warden Rustin had received his paperwork. Even if DiLauri could show that Warden Rustin was aware that he would need follow-up care, proof of such awareness would not show that Warden Rustin was involved in the alleged denial of care during the two days

6

prior to DiLauri's transfer. We thus agree with the District Court that DiLauri fails to state a claim against Warden Rustin. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs").[2]

We disagree, however, with the District Court's conclusion that DiLauri's claims against Sheriff Mullen are predicated solely on the operation of respondeat superior. DiLauri does not contend that Sheriff Mullen is vicariously liable for the harm caused by Deputy Sheriff Jane Doe. He claims that Sheriff Mullen failed to resolve the "well known hazard" presented by the stairway. In addition, in his brief and reply brief, DiLauri states it was Sheriff Mullen's policy to use the stairway to transport prisoners and Jane Doe did so at his direction. He also states that Sheriff Mullen was in the area at the time of the incident. The dismissal of DiLauri's claims against Sheriff Mullen based on his lack of personal involvement was not warranted. See Dellarciprete, 845 F.2d at 1207 (noting personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence). Under Grayson, DiLauri should be

---

[2]The District Court did not give DiLauri an opportunity to amend his complaint before dismissing it, but we conclude that allowing amendment would be futile. DiLauri does not argue in his brief that Warden Rustin played any part in the alleged denial of medical care. Other than stating in his original complaint that he complained to Warden Rustin about the lack of medical care, DiLauri did not assert in any of his subsequent filings in District Court that Warden Rustin was involved in the alleged denial of care. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding district court must inform plaintiff that he has leave to amend a complaint before dismissing it unless amendment would be inequitable or futile).

afforded an opportunity to amend his complaint to include all of his allegations regarding

Sheriff Mullen's involvement in the alleged harm.  293 F.3d at 108.[3]

Accordingly, we will affirm in part and vacate in part the judgment of the District

Court.

---

[3]Appellees do not argue in their brief that the District Court's decision should be affirmed on any alternative ground.  The District Court did not address the other grounds for dismissal asserted by Appellees in their motion to dismiss and we will not consider them in the first instance.